1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Edward Powell, | ) No. CV 11-00271-TUC-FRZ (DTF) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Charles L. Ryan; et. al., | ) |
| Respondents. | ) |

Petitioner Robert Edward Powell has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 6.) Respondents have filed an Answer (Doc. 32), and Petitioner has filed a Reply and a Supplemental Reply (Docs. 40, 41, 46). In accordance with the Rules of Practice of the Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. The Magistrate Judge recommends that the District Court, after its independent review of the record, deny and dismiss the Amended Petition for Writ of Habeas Corpus.

## FACTUAL & PROCEDURAL BACKGROUND

The State of Arizona charged Petitioner in the Pima County Superior Court with two counts of sexual assault, a class 2 felony, in violation of A.R.S. § 13-1406(A) (Counts One and Two); and kidnaping, a class 2 felony in violation of A.R.S. § 13-1304(A)(3) (Count Three). (Doc. 32, Ex. A, Item 1.) These crimes were committed on or about June 19, 2004, against Rita L. (Rita) (*id.*), who testified at trial as to the events that formed the basis for the

charges (Doc. 63, Ex. H at 31-119, Ex. I at 4-18, Ex. J at 5-8).  The State alleged sentencing enhancements, including Petitioner's prior felony convictions.  (*Id.*)  Petitioner's trial in November 2005, resulted in a mistrial when the jury was unable to reach a verdict.  (Doc. 32, Ex. A, Item 95.)  Petitioner was retried in February 2006, and convicted on all three counts. (Doc. 58, Ex. A, Items 127-30, 139.)  The jury found as an aggravating circumstance that the victim had suffered emotional harm.  (Doc. 63, Ex. L at 25.)  Prior to sentencing, Petitioner admitted prior felony convictions in two separate matters.  (Doc. 32 at 15-16 (citing Doc. 63, Ex. M at 2-3).)  Petitioner was sentenced on Counts One and Two to consecutive aggravated prison terms of 18 years and on Count Three to the presumptive prison term of 15.75 years to run concurrently with the sentences on Counts One and Two.  (Doc. 63, Ex. M at 20-22.)

Petitioner's convictions were affirmed by the Arizona Court of Appeals on May 19, 2008. (Doc. 63, Ex. R.).  Petitioner's petition for review filed in the Arizona Supreme Court was summarily denied on October 29, 2008.  (Doc. 33, Exs. S, U.)

Petitioner, through counsel, filed a Petition for Post-Conviction Relief (PCR) which was denied by the trial court on March 10, 2010.  (Doc. 32, Ex. B, Items 1, 32.)  On January 11, 2011, the Arizona Court of Appeals issued a memorandum decision granting review but denying relief.  (Doc. 32, Ex. B, Item 33; Doc. 33, Exs. V, W.)  Petitioner did not seek review by the Arizona Supreme Court.  (Doc. 32 at 19; Doc. 6 at 5.)

**DISCUSSION**

Respondents do not dispute the timeliness of the petition and concede the claims are exhausted.  (Doc. 32 at 19.)  Respondents contend that the Amended Petition must be dismissed because Petitioner's claims are not cognizable for federal habeas relief or should be denied on the merits.

**LEGAL STANDARDS FOR RELIEF UNDER THE AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)).  The AEDPA's "highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The last relevant state court decision is the last reasoned state decision regarding a claim.  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final."  *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review.  "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final.  *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).  The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.  *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  In

1   characterizing the claims subject to analysis under the "contrary to" prong, the Court has

2   observed that "a run-of-the-mill state-court decision applying the correct legal rule to the

3   facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to'

4   clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir.

5   2004).

6        Under the "unreasonable application" prong of  § 2254(d)(1), a federal habeas court

7   may grant relief where a state court "identifies the correct governing legal rule from [the

8   Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or

9   "unreasonably extends a legal principle from [Supreme Court] precedent to a new context

10  where it should not apply or unreasonably refuses to extend the principle to a new context

11  where it should apply." *Williams*, 529 U.S. at 407.  For a federal court to find a state court's

12  application of Supreme Court precedent "unreasonable," the petitioner must show that the

13  state court's decision was not merely incorrect or erroneous, but "objectively unreasonable."

14  *Id*. at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

15       Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state

16  court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*,

17  545 U.S. 231, 240 (2005) (*Miller-El II*).   A state court decision "based on a factual

18  determination will not be overturned on factual grounds unless objectively unreasonable in

19  light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537

20  U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

21  In considering a challenge under § 2254(d)(2), state court factual determinations are

22  presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by

23  clear and convincing evidence."  28 U.S.C. § 2254(e) (1); *Landrigan*, 550 U.S. at 473-74;

24  *Miller-El II*, 545 U.S. at 240.

25                                    **MERITS ANALYSIS**

26       Petitioner has asserted twelve grounds for relief in his amended federal habeas

27  petition. The Court has not considered Petitioner's grounds in chronological order.  Rather,

28  the Court first has considered Petitioner's claim regarding the constitutional sufficiency of

1   the evidence that supported his convictions, in order to put in context Petitioner's other

2   habeas claims.

3        *Ground Five:  Sufficiency of the Evidence*

4        Petitioner contends the evidence was insufficient to support the verdicts in violation

5   of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and the Arizona

6   constitution.[1]  (Doc. 6 at 12.)  Petitioner was convicted of sexual assault involving non-

7   consensual sexual intercourse, sexual assault involving non-consensual oral sexual contact,

8   and kidnaping.

9        Petitioner presented this claim on direct appeal.  (Doc. 63,  Ex. O at 48-51.)   After

10  noting that a conviction could be obtained based on the victim's uncorroborated testimony

11  unless the story was physically impossible or so incredible that no reasonable person could

12  believe it, the court of appeals determined that Rita's account of the incident was neither

13  physically impossible nor incredible.  (Doc. 63, Ex. R at 21-22.)  The jury heard Petitioner's

14  evidence that his brother was asleep in the adjoining room at the time of the incident and

15  heard nothing unusual, the forensic evidence could be explained by consensual sexual

16  relations, and Rita's time line of the events after she arrived at Petitioner's apartment was not

17  internally consistent.  (*Id*.)  The jury nonetheless concluded that Rita was a credible witness.

18  (*Id*.)

19       On habeas review, the "rational factfinder" standard is used to determine whether

20  there is sufficient evidence to support a state court's finding of the elements of the crime.

21  *See Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).  The question is "whether, after viewing the

22  evidence in the light most favorable to the prosecution, any rational trier of fact could have

23  found the essential elements of the crime beyond a reasonable doubt."   *See Jackson v.*

24  *Virginia*, 443 U.S. 307, 319 (1979).  A habeas court "faced with a record of historical facts

25  that supports conflicting inferences must presume – even if it does not affirmatively appear

26

27  _____

28        [1] Petitioner relies on the Arizona Constitution in multiple claims. Federal habeas relief
    lies only for errors of federal law. 28 U.S.C. § 2241(c)(3).

in the record – that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Id.* at 326; *see also Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam).   This type of claim is properly analyzed under the deferential standard of  § 2254(d)(1); thus, the Court asks whether it was an objectively unreasonable application of *Jackson* for the Arizona Court of Appeals to deny this claim.   *See Sarausad v. Porter*, 479 F.3d 671, 677-78, (9th Cir.), *vacated in part on other grounds*, 503 F.3d 822 (9th Cir. 2007).

After reviewing the entirety of the trial transcripts and viewing the evidence in the light most favorable to the prosecution, the Court finds that the state appellate court adequately summarized the critical evidence at trial:

> In June 2004, the victim, Rita L., lived with her adult son at his residence in Tucson.  At the time, Bob H. had also been renting a room from Rita's son for two or three months.  On the evening of June 18, Rita's sister drove Rita and Bob H. in her van to a local bar to celebrate Bob H.'s birthday.  They arrived at the bar at about 7:00 p.m.  Although Rita did not usually drink alcohol, she had six glasses of wine in the course of the evening.  Around 10:30, Rita recognized [Petitioner], whom she had met and talked with at the bar several times before, and he accepted Rita's invitation to join them.  Rita and Powell spent the rest of the evening dancing together, hugging and kissing while they danced.  As Rita, her sister, and Bob H. were leaving the bar at about 1:00 a.m., they offered to drive [Petitioner] home.  Rita and [Petitioner] continued hugging and kissing in the back seat on the way to [Petitioner's] apartment, with [Petitioner] rubbing Rita's breasts and between her legs over her clothing. [Petitioner] told Rita that she was going to spend the night with him, but she responded that she did not know him well enough.

> When they arrived at [Petitioner's] apartment, Rita offered to walk him to the door while the other two stayed in the van with the engine running. [Petitioner] invited Rita into his apartment, and Rita stepped inside, thinking she would be there only briefly.  Once inside, however, Rita turned to see [Petitioner] locking the door.  When she asked why he had done so, [Petitioner] responded, "You're staying all night...We're going upstairs."  Rita felt intimidated by him and complied.  As [Petitioner] followed her up the stairs with his hand on her back, Rita continued to say she wanted to go outside to her sister. [Petitioner] directed her into one of the two upstairs bedrooms.

> Once in the bedroom, [Petitioner] told Rita to remove her blouse and brassiere.  Rita repeated that she "did not want to do this" and that she had to get back to her sister. [Petitioner] said he would call Rita's sister using his cell phone and had Rita give him her sister's phone number.  After he dialed the number and got no answer, Rita gave [Petitioner] Bob H.'s number.  When

Bob H. answered, [Petitioner] handed the phone to Rita. Rita told him that she would be staying with [Petitioner] and that he and her sister should leave. [Petitioner] was standing right behind her as she spoke on the phone. Bob H. told her to come back to the van, but Rita responded that she was a "big girl" and could take care of herself.

After Rita ended the call, her sister and Bob H. drove away. [Petitioner] then told Rita to finish undressing. Although she complied, she continued to say she did "n[o]t want to do this." [Petitioner] ordered Rita to perform oral sex on him, which she did. He then forced her to have sexual intercourse. He attempted anal intercourse but stopped and resumed vaginal intercourse when Rita protested and claimed she had recently had rectal surgery. Afterward, [Petitioner] told Rita he had called for a taxi; he then fell asleep. Rita got dressed and waited outside the apartment but, when no taxi arrived, she walked home. The next day, after talking to a friend, Rita called the police, and [Petitioner] was subsequently charged with two counts of sexual assault and one count of kidnaping.

(Doc. 63, Ex. R at 3-4.)

Based on the evidence presented, a rational juror could have found Petitioner guilty beyond a reasonable doubt of the charged sexual assaults and kidnaping crimes. It was not objectively unreasonable for the state court of appeals to deny Petitioner's insufficiency of the evidence claim.

### Ground Four: Jury Selection

Petitioner contends the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, and under the Arizona Constitution, when it overruled his objection to the State's peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986). (Doc. 6 at 9.) He argues the prosecutor's reasons for striking male jurors were not sufficiently gender-neutral.

*Batson* established a three-step process for evaluating a defendant's objection to a peremptory challenge. A defendant must make a prima facie showing that a challenge was based on gender. If a defendant makes this showing, the prosecution must then offer a gender-neutral basis for the challenge. The prosecutor's explanation need not be persuasive or even plausible. Finally, the court must determine whether the defendant has shown "purposeful discrimination." *United States v. Alanis*, 335 F.3d 965, 967 (9th Cir. 2003); *Batson*, 476 U.S. at 97-98; *Rice v. Collins*, 546 U.S. 333, 338 (2006). The ultimate burden

of persuasion remains with the opponent of the strike.  *Rice*, 546 U.S. at 338.  "[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's . . . neutral explanations for the *Batson* challenge." *Id.* at 338-39.  State-court factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

Petitioner asserted in the trial court that the State's peremptory challenges were improperly motivated by gender because six male jurors were stricken. (Doc. 58, Ex. A, Item 126; Doc. 32, Ex. E at 111-16.)  The trial court incorrectly indicated that *Batson* did not apply to gender-based strikes but allowed the prosecutor to state the gender-neutral reasons for the peremptory challenges. (Doc. 58, Ex. A, Item 133; Doc. 32, Ex. E at 109-12.)  The prosecutor gave the following reasons:

> (1)     Jurors Staggs and Springer did not appear attentive during voir dire with the prosecutor (Doc. 32, Ex. E at 112-15);
>
> (2)     Juror Mongeu did not drink alcohol (*id*. at 99-100, 113);
>
> (3)     Juror Jachens "watched those immature [TV] shows" like "Beavis and Butthead" (*id*. at 91, 113-14);
>
> (4)     Juror Obringer had a DUI conviction in California (*id*. at 35, 114); and
>
> (5)     Juror Verdugo "wasn't married, didn't have children, and he was very young" (*id*. at 93-94, 114).

Petitioner did not challenge the accuracy of the State's proffered reasons.  The trial court proceeded to impanel the jury. (Doc. 58, Ex. A, Items 133, 134; Doc. 32, Ex. E at 115-17.)

Petitioner asserted on direct appeal that: (1) the trial court erroneously believed that *Batson* did not apply to gender-motivated peremptory challenges; (2) the prosecutor could not recall the reasons for three of the challenges; (3) the State's proffered reason based on inattentiveness was not an objectively verifiable justification; (4) the State's explanations for striking certain male jurors were pretextual because the prosecution did not strike similarly situated female jurors; and (5) the trial court "declined to reach the third-step of the analysis." (Doc. 63, Ex. O at 41-47.)

The Arizona Court of Appeals rejected  Petitioner's arguments.  (Doc. 63, Ex. R at

18-21.)  It noted that the trial court appeared uncertain as to whether *Batson* applied to gender-based challenges but had commented that, "[i]f a male is on trial, they're entitled to have a non-gender based reason for strike" and proceeded to the next part of the *Batson* test. The appellate court found that the prosecutor had explained her reasons for the strikes; regarding the strike based on inattentiveness, the prosecutor may rely on demeanor alone in exercising a strike and the trial court's determination as to a juror's demeanor is entitled to deference; the trial court implicitly had accepted the state's reasoning when it rejected Petitioner's arguments; and the grounds cited by the prosecutor have been upheld as valid nondiscriminatory reasons for striking a prospective juror. (*Id*.)  The state court of appeals correctly cited Supreme Court precedent that a party may not exercise a peremptory strike based on gender.  (Doc. 63, Ex. R  at 18 (citing *J.E.B. v. Alabama*, 511 U.S. 127, 146 (1994).)  It then applied the proper three-part analysis to Petitioner's argument.

The record supports the conclusion that the prosecutor provided gender-neutral reasons for all six of its peremptory challenges as supported by case law.  A prior conviction for driving under the influence is a valid, neutral reason for exercising a peremptory challenge. *United States v. Granados*, 596 F.3d 970, 975 (8th Cir. 2010).  Because the facts of the case involved alcohol consumption, the prosecutor validly could strike a juror who does not drink based on concern that the juror might harbor a negative attitude toward those who do drink.  *Cf. Burks v. Borg*, 27 F.3d 1424, 1429 & n.3 (9th Cir. 1994) (prosecutor's evaluation of a juror's demeanor, tone, and facial expressions may lead to a "hunch" that the juror might be biased, and a peremptory challenge based on this reason would be legitimate). Exercising a challenge because a juror watches certain television shows or has provided answers on voir dire that may indicate immaturity is acceptable.  *See United States v. Murillo*, 288 F.3d 1126, 1136 (9th Cir. 2002) (juror's answer that her favorite TV show was Judge Judy was permissible ground for a prosecutor's peremptory challenge).   The prosecutor may strike a juror who is not married, does not have children, and is very young. *See Rice*, 546 U.S. at 336, 341 (youth and marital status); *United States v. Martinez*, 168 F.3d 1043, 1047 (8th Cir. 1999) (no error where trial court accepted prosecutor's explanation that

1   a juror had been struck because of her marital status and age and her body language indicated

2   an attitude unfavorable to the government).  A prosecutor also "is justified in striking jurors

3   that he or she perceives to be inattentive or uninterested." *United States v. Garrison*, 849

4   F.2d 103, 106 (4th Cir. 1988).  "The trial judge is able to observe a juror's attention span,

5   alertness, and interest in the proceedings and thus will have a sense of whether the

6   prosecutor's challenge can be readily explained by a legitimate reason." *Tolbert v. Page*, 182

7   F.3d 677, 683 (9th Cir. 1999).  Critically, there are no Supreme Court cases concluding that

8   the reasons cited by the prosecutor are not gender-neutral. Finally, it was not unreasonable

9   to credit the prosecutor's neutral explanations for the strikes and find that Petitioner failed

10  to establish purposeful discrimination. Petitioner's argument that the trial court failed to

11  reach the third step in the analysis was properly rejected because such a finding may be

12  considered implicit in the denial of a defendant's *Batson* challenge and subsequent

13  empanelment of the jury. *United States v. Castorena-Jaime*, 285 F.3d 916, 929-30 (10th Cir.

14  2002).  The state appellate court's decision was not contrary to, or an unreasonable

15  application of, then-existing Supreme Court precedent.  Ground Four should  be dismissed.

16  ### Ground One:  Admission of Other Act Evidence

17  Petitioner contends that the trial court's ruling, admitting other act evidence from

18  2001, did not comply with Arizona Rule of Evidence 404(c) and violated his constitutional

19  rights to due process and a fair trial.  Petitioner argues that the State failed to prove the act

20  by clear and convincing evidence and "did not attempt to minimize the evidence's prejudicial

21  effect while preserving its probative value."  (Doc. 6 at  6.)

22  Prior to the first trial, the State filed notice of its intent to admit evidence of two "other

23  acts":  (1) on October 23, 1983, Petitioner sexually assaulted Mary Ellen C.  for which he

24  pleaded guilty in Pima County Superior Court (CR 11966) to attempted sexual assault and

25  was sentenced to 15 years of imprisonment; and (2) on February 27, 2001, Petitioner

26  attempted to force Joyce B. (Joyce) to engage in sexual activities against her will and beat

27

28

her.[2] (Doc. 6 at 6; Doc. 32, Ex. A, Items 30, 34, 45, 55, 69.) The State contended that these "other acts" were admissible because they showed that Petitioner had a character trait giving rise to an aberrant sexual propensity to commit the offense charged. (Doc. 6 at 6; Doc. 32, Ex. D at 117-31.) Petitioner moved to exclude this evidence arguing it did not satisfy the prerequisites of Arizona Rule of Evidence 404. (Doc. 32, Ex. A, Items 37, 43, 56.) The trial court held an evidentiary hearing on admissibility and issued an order that precluded evidence of the 1983 Mary Ellen C. incident but allowed evidence of the 2001 Joyce B. incident. (Doc. 32, Ex. A, Item 69.) Glenda Graham and Tucson Police Detective Lewis Apodaca testified at the evidentiary hearing as to the Joyce B. incident. (Doc. 32, Exs. C, D.) Joyce had passed away prior to the hearing. (Doc. 32, Ex. C at 6, 55; Doc. 63, Ex. J at 124.)

Ms. Graham testified that her husband knew Petitioner from prison. (Doc. 32, Ex. C at 66.) Ms. Graham met Joyce on the evening of February 27, 2001, when Petitioner brought Joyce to the Grahams' home. (Doc. 32, Ex. C at 67, Ex. D at 37. ) It appeared to Ms. Graham that Petitioner and Joyce "had been drinking, partying . . . ." (Doc. 32, Ex. C at 67.) That evening, the Grahams, Petitioner, and Joyce drank and talked. (*Id.* at 68.) Petitioner and Joyce were "friendly with each other . . . like in maybe hugging, maybe a kiss or two, it wasn't like really indecent . . . ." (*Id.* at 68-69.) They seemed unable to drive home so the Grahams made them a makeshift bed on the living room floor and left them alone. (*Id.* at 68-70.) The Grahams were in the bathroom when Ms. Graham heard "this 'ouch,' you know, this like real antagonizing [sic] like somebody's being hurt really seriously. . . . I knew it was like a bloodcurdling ouch sound." (*Id.* at 70.) Ms. Graham heard Petitioner say "he wanted [Joyce] to give him oral sex," Joyce refused, "[a]nd the next thing I know, I hear a slap on the head. . . . I can tell a slap when I hear one." (*Id.* at 70-71.) The Grahams went into the living room and Ms. Graham saw Petitioner and Joyce undressed on the floor. Joyce

---

[2] As to the 2001 act, Petitioner pleaded guilty to failure to register as a sexual offender and was sentenced to three years in prison. (Doc. 32, Ex. A, Item 69.)

1    was struggling to get away from Petitioner as he tried to pull her closer to him.  (*Id.* at 71-

2    74.)

3        Joyce wrapped a sheet around herself and went into the bathroom with Ms. Graham.

4    When Ms. Graham asked what was going on, Joyce said she could show her what Petitioner

5    had done to her.  She unwrapped the sheet and showed Ms. Graham black and purple

6    "bruises all over her arm," breast, buttocks, and hip. (Doc. 32, Ex. C  at  74-77, Ex. D at 14-

7    18, 21-23.) During the hearing, Ms. Graham identified photographs that showed the bruising

8    she had seen on Joyce that night.  (Doc. 32, Ex. C at  82-86; Doc. 63, Ex. N.)  Joyce told Ms.

9    Graham that Petitioner had "grabbed her and rung her breast around."  (Doc. 32, Ex. C at

10   86, Ex. D at 27.)  Ms. Graham described Joyce as "very shook up, crying, shaking."  (Doc.

11   32, Ex. D at 27.)   When Ms. Graham and Joyce came out of the bathroom, Petitioner called

12   out: "[Y]ou can't give head worth a damn and you're nothing but a whore."  (Doc. 32, Ex.

13   C at 78.)

14       Detective Apodaca learned about the incident when Joyce reported it to officers who

15   were looking for Petitioner.  (Doc. 32, Ex. D at 32-33.)  Detective Apodaca and a female

16   officer photographed Joyce's bruises on March 2, 2001.  (*Id.* at 32-36, 39; Doc. 63, Ex. N.)

17   Detective Apodaca conducted a recorded interview of Ms. Graham on March 21, 2001.

18   (Doc. 32, Ex. C at 92-93, Ex. D at 22, 46, Ex. F at 61; Doc. 33, Ex. Z.)  He stated in his

19   report that Ms. Graham had trouble remembering the exact sequence of events of the incident

20   but that she "did remember that night [Petitioner] was beating [Joyce] and trying to perform

21   sexual acts . . . ."  (Doc. 32, Ex. D at 44-45, 47-49.)

22       Ms. Graham testified that she had sustained multiple head injuries when she was

23   younger that caused her to have blackouts and memory loss. She testified that her

24   conversation in the bathroom with Joyce that night was still "clear in my mind" and that she

25   remembered it because of Joyce's "crying out in the agony of her voice, she was crying out.

26   And the pain that she sounded like she was in."  (Doc. 32, Ex. C at 89, 97 ("I do have short-

27   term and long-term memory problems."), Ex D at 22-23.)

28       The trial court ruled that Joyce's "statements to the Grahams [were] admissible as

- 12 -

excited utterances and then existing mental, emotional and physical state exceptions to the hearsay rules.  Rules of Evidence 803(2) and (3)."  (Doc. 32, Ex. A, Item 69.)  The court found that: (1) the State proved with clear and convincing evidence that Petitioner sexually assaulted or attempted to assault Joyce and that Ms. Graham was "a credible witness concerning the events that occurred between [Petitioner] and [Joyce] at her home in February 2001"; (2) the prior act was not remote in time because Petitioner "was only out of custody approximately nine (9) months between the attack on [Joyce] and the alleged attack in" the case involving Rita; (3) the charged offense and prior act were "very similar" because both involved attempted sexual intercourse and oral sexual contact with middle-aged women whom Petitioner knew, physical contact and expression of affection before the attacks, and claims of consent by Petitioner; and (4) Petitioner committed a prior sexual assault against [Mary Ellen C.] "albeit with a different *modus operandi.*"

During Petitioner's second trial, the State presented evidence of the Joyce B. incident through the testimony of Ms. Graham and Detective Apodaca and the photographs of Joyce's bruises.  (Doc. 32 at 34; Doc. 32, Ex. F at 36-155; Doc. 63, Ex. N.)  The trial court gave the jury a limiting instruction concerning its consideration of the evidence.  (Doc. 63, Ex. K at 24-25; Doc. 58, Ex. A, Item 124.)[3]

---

[3] The limiting instruction was as follows:

Evidence of an alleged prior attempted sexual assault involving Joyce Briden has been presented.  Evidence to rebut this has also been presented.  You may consider this evidence in determining whether the defendant had a character trait that predisposed him to commit the crimes charged.

You may determine that the defendant had character traits that predisposed him to commit the crimes charged only if you decide that the State has proved by clear and convincing evidence that:
1.    The defendant committed the prior attempted sexual assault; and
2.    These acts show the defendant's character predisposed him to commit abnormal or unnatural sex acts.

You may not convict the defendant of the crimes charged simply because of the fact you find he committed the prior attempted sexual assault, or that he had a character trait that predisposed him to commit the crimes

Petitioner raised this issue on direct appeal. (Doc. 63, Ex. O at 13-25.) The Arizona Court of Appeals affirmed, finding that the trial court's ruling satisfied the prerequisites under Arizona Rule of Evidence 404(c). (Doc. 63, Ex. R. at 5-13.) It observed as to this and other evidentiary issues "that the exercise of [Petitioner's constitutional] rights at trial is subject to the ordinary rules of evidence, and a defendant's constitutional rights are thus not violated by a trial court's routine application of the Arizona Rules of Evidence." (*Id.* at 5.) The trial court was found to have properly balanced the evidence's probative value against its prejudicial effect:

> The evidence the state introduced here was no more than necessary to establish that the prior attempted sexual assault took place and shared key characteristics with the charged offenses. The photographs of J.'s bruising served the permissible purposes of corroborating and illustrating witness testimony . . . . Furthermore, as [Petitioner] acknowledges, the court did give an appropriate, limiting jury instruction.

(*Id.* at 10-11.)

Rule 404(c) provides in pertinent part that in a criminal case charging a sexual offense, "evidence of other crimes, wrongs, or acts may be admitted by the court if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged" and that evidence to rebut such proof may also be admitted. The court shall admit evidence of the other act only if it finds each of the following:

> (A)   The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B)   The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.

Ariz. R. Evid. 404(c)(1).   The court should also consider remoteness, similarity or

---

charged. Evidence of these acts does not lessen the State's burden of proving guilt beyond a reasonable doubt.

(Doc. 63, Ex. K at 24-25; *see also* Doc. 58, Ex A, Ex. 124.)

1  dissimilarity, and strength of the other act evidence; the frequency of the other acts; the

2  surrounding circumstances and relevant intervening events; other similarities or differences;

3  and other relevant factors.  *Id.*  If the other act evidence is admitted, the court must instruct

4  the jury as to its proper use. Ariz. R. Evid. 404(c)(2).

5      A state court's fact-finding process may be defective, resulting in an unreasonable

6  determination of the facts in light of the evidence presented, where the state court "plainly

7  misapprehend[s] or misstate[s] the record in making their findings, and the misapprehension

8  goes to a material factual issue that is central to the  petitioner's claim . . . ." *Taylor,* 366

9  F.3d at 1001 (discussing 28 U.S.C. § 2254(d)(2) (citations omitted)).  Despite arguing that

10 the court misstated the facts, Petitioner does not identify any misstatements.  Based on this

11 Court's review, the evidence admitted at the evidentiary hearing is consistent with the state

12 court's factual findings as affirmed on appeal.  The record does not support Petitioner's

13 contention that the state court's ruling was based on an unreasonable determination of the

14 facts.

15      As for Petitioner's argument that the ruling admitting the evidence was contrary to,

16 or an unreasonable application of, federal law as determined by the Supreme Court, "federal

17 habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers,* 497 U.S. 764,  780

18 (1990).  "[I]t is not the province of a federal habeas court to reexamine state-court

19 determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  The

20 issue for the federal habeas court "is whether the state proceedings satisfied due process."

21 *Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting *Jammal v. Van de*

22 *Kamp,* 926 F.2d 918, 919-920 (9th Cir. 1991)).  A state trial court's admission of evidence

23 under state evidentiary law will form the basis for federal habeas relief only where the

24 evidentiary ruling "so fatally infected the proceedings as to render them fundamentally

25 unfair" in violation of the petitioner's due process rights. *Jammal,* 926 F.2d at 919.

26 "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient

27 basis for granting habeas relief." *Id.*

28      The U.S. Supreme Court has "defined the category of infractions that violate

1   'fundamental fairness' very narrowly," *Dowling v. United States,* 493 U.S. 342, 352 (1990),

2   and "has made very few rulings regarding the admission of evidence as a violation of due

3   process." *Holley,* 568 F.3d at 1101.  It has declined to hold that evidence of other crimes or

4   bad acts "so infused the trial with unfairness as to deny due process of law." *Estelle,* 502

5   U.S. at 75 & n.5 (noting that the Court "express[ed] no opinion on whether a state law would

6   violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

7   propensity to commit a charged crime").  Further, the Supreme Court "has not yet made a

8   clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

9   process violation sufficient to warrant issuance of the writ.  Absent such 'clearly established

10  Federal law,' we cannot conclude that the state court's ruling was an 'unreasonable

11  application'" *Holley*, 568 F.3d at 1101 (citing *Carey v. Musladin,* 549 U.S. at 77).[4]

12      Petitioner's claim that admission of the Joyce B. incident was unfairly prejudicial is

13  foreclosed.  There is no clearly established federal law "ruling that admission of irrelevant

14  or overtly prejudicial evidence constitutes a due process violation sufficient to warrant

15  issuance of the writ." *Holley,* 568 at 1101.  Here, the trial court instructed the jury that it

16  could "not convict the defendant of the crimes charged simply because of the fact you find

17  he committed the prior attempted sexual assault, or that he had a character trait that

18  predisposed him to commit the crimes charged.  Evidence of these acts does not lessen the

19  State's burden of proving guilt beyond a reasonable doubt."  (Doc. 63, Ex. K at 24-25.)  A

20  habeas court "must presume that the jury followed its instructions . . . ." *Boyde v. Brown,*

21  404 F.3d 1159, 1173 (9th Cir. 2005); *see also Blueford v. Arkansas*, 132 S.Ct. 2044, 2051

22

23

---

24      [4] In *Holley*, the court denied the petitioner's claim regarding admission of evidence
    of pornographic materials even though under Ninth Circuit precedent admission of such

25  evidence would have "resulted in a trial that was fundamentally unfair and would warrant
    issuance of the writ . . . ."  568 F.3d at 1101 n.2.  The *Holley* court so ruled because of the

26  "strict standards of AEDPA . . . ." together with the lack of clearly established Federal law
    with regard to admission of irrelevant or overtly prejudicial evidence. *Id.* at 1101 & n.2 ("in

27  cases where the Supreme Court has not adequately addressed a claim, this court cannot use
    its own precedent to find a state court ruling unreasonable.").

28

1    (2012) ("A jury is presumed to follow its instructions.").  The state court's ruling was not

2    contrary to, or an "unreasonable application" of, clearly established Federal law.  *Id.*  Ground

3    One fails on the merits.

4                    **Ground Three:  Preclusion of Petitioner's Alternative Explanation Evidence**

5            Petitioner contends he was deprived of his constitutional right to present a defense

6    when the trial court ruled he could not present evidence, by way of Lisa Sinclaire's

7    testimony, providing an alternative explanation for Joyce's bruises.[5]  (Doc. 6 at 8.)

8            The trial court held an evidentiary hearing on the State's motion to exclude the

9    testimony of defense witness Lisa Sinclaire.  (Doc. 32, Ex. A, Items 59, 73; Doc. 33, Ex. Y.)

10   Sinclaire, who owned the management company for the apartment complex where Joyce

11   lived for the six months preceding April 2001, testified that she saw Joyce sober only once,

12   when she rented the apartment.  (Doc. 33, Ex. Y at 3, 5-7.)  Sinclaire assisted Joyce in

13   walking across the complex's grounds to her apartment and observed her fall "on a couple

14   of occasions" such as onto the office steps and onto the hood of a parked car.  (*Id.* at 6-14.)

15   Sinclaire had never seen bruises on Joyce's body and last saw Joyce fall in January 2001.

16   (*Id.* at 7-12, 14-16.)  The trial court ruled Sinclaire's testimony inadmissible as improper

17   character evidence because it showed that Joyce was an alcoholic or had a drinking problem;

18   it was irrelevant because Sinclaire had last seen Joyce fall more than a month before the

19   charged offenses and the evidence could not have accounted for Joyce's bruising on February

20   27, 2001; and any relevance of the testimony was outweighed by the danger of unfair

21

22            [5] He also argues it was error to exclude testimony of a nurse regarding the age of

23   Joyce's bruises as seen in the photographs.  The trial court precluded this testimony because
     the defense had not given the State notice of the expert testimony.  (Doc. 32, Ex. I at 97-108.)

24   Petitioner did not fairly present this portion of the claim on direct appeal or during PCR
     proceedings.  (Doc. 32, Exs. B, O.)  If Petitioner were to return to state court now to litigate

25   this allegation it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of

26   the Arizona Rules of Criminal Procedure because it does not fall within an exception to
     preclusion.  Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, this allegation is technically

27   exhausted but procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1

28   (1991).

prejudice.  (*Id.* at 20-22.)  Petitioner raised the Sinclaire issue on direct appeal.  (Doc. 63, Ex. O at 34-39.)  The Arizona Court of Appeals affirmed, holding that admission of the evidence would have invited additional extraneous evidence such as medical and character evidence, and the evidence's negligible probative value was substantially outweighed by the risk of confusion and waste of time.  (Doc. 63, Ex. R at 13-15.)

As with Ground One, federal habeas relief does not lie for errors of state law.  *Estelle*, 502 U.S. at 67 & n.2.  The Supreme Court "[o]nly rarely" has found the exclusion of evidence under a state rule violated a defendant's right to present a defense.  *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013).  "While the Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  *Clark*, 548 U.S. at 770 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)); *see Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence").  The state appellate court's ruling affirming the inadmissibility of Sinclaire's testimony was not contrary to, or an unreasonable application of, established federal law based on Supreme Court holdings.

### Ground Two:  Preclusion of the Victim's Sexual History

Petitioner challenges the trial court's ruling under A.R.S. § 13-1421, Arizona's rape-shield statute, precluding him from introducing evidence that Rita had a sexual relationship with Bob H. (Bob) because the evidence would have supported his defense theory that Rita fabricated the sexual assault.  (Doc. 6 at 7.)  Petitioner asserts that this ruling violated his rights to due process and equal protection because he was unable to confront witnesses and present exculpatory evidence.  (*Id.*)

Petitioner sought to introduce evidence of Rita's sexual history with Bob based on the theory that, when her actions with Petitioner failed to make Bob jealous, she falsified the

1    story that Petitioner had raped her.  (Doc. 32, Ex. A, Item 106; Doc. 63, Ex. G at 2-5.)  The

2    trial court held an evidentiary hearing during which Bob testified that he lived with Rita's

3    son for approximately four months, had begun having sexual relations with Rita a little while

4    after he moved in, and their last encounter occurred in April 2004.  (Doc. 32, Ex. F at 69-70,

5    83.)  Bob claimed they had sex one or two times or maybe a little more and they sometimes

6    slept in the same bed but he denied they were boyfriend and girlfriend.  (*Id*. at 69-70, 83-86.)

7    Bob testified that he was not jealous when he observed Rita's behavior with Petitioner on the

8    night of the incident.  (*Id*. at 71-74, 83-84.)  Bob testified that he told Rita to return to the van

9    when they were at Petitioner's apartment because she was a good friend, she had been

10   drinking, he was concerned she might do something she would regret, and he felt protective

11   of her because he was renting a room from Rita's son.  (*Id*. at 73-77, 83.)  Rita was not called

12   as a witness at the evidentiary hearing.

13       The trial court ruled that evidence of a sexual relationship between Bob and Rita was

14   inadmissible, their prior sexual relationship did not establish that Rita had a motive to lie, and

15   the prejudicial nature of the evidence substantially outweighed its probative value.  The trial

16   court allowed Petitioner to argue that Rita had a motive to lie because she was worried about

17   how her sister and Bob viewed her behavior on the night of the incident.  (Doc. 58, Ex. A,

18   Item 135; Doc. 63, Ex. G at 7-10.)

19       The Arizona Court of Appeals affirmed the trial court's ruling by first summarizing

20   Bob's testimony and then finding that none of the testimony supported Petitioner's theory

21   that Rita flirted and engaged in consensual sex with Petitioner to make Bob jealous and then

22   subsequently fabricated the sexual assault.  (Doc. 63, Ex. R. at 16-18.)  Petitioner did not call

23   Rita as a witness at the evidentiary hearing and, therefore, the record was silent regarding

24   whether her perspective of her relationship with Bob might have supported Petitioner's

25   theory.  In addition, the trial court did not preclude Petitioner from eliciting testimony about

26   the general nature of Rita's relationship with Bob or from questioning Bob and Rita to

27   support his theory that Rita had been attempting to make Bob jealous.  Petitioner did not

28   pursue such questioning at trial.  The appellate court concluded that there was a lack of

1    evidence to support Petitioner's theory and that the trial court's application of the rape-shield

2    statute did not violate Petitioner's constitutional rights to confront adverse witnesses and

3    present a defense. (*Id.*)

4         Arizona Revised Statute § 13-1421 prohibits the admission of "evidence relating to

5    a victim's reputation for chastity and opinion evidence relating to a victim's chastity" in any

6    prosecution for a sexual offense under Title 14 of the state criminal code. Before evidence

7    of specific instances of a victim's prior sexual conduct may be admitted, the trial court must

8    find that the evidence is relevant and material to a fact in issue, the prejudicial nature of the

9    evidence does not outweigh its probative value, and the evidence falls within a prescribed

10   statutory exception to the general rule of inadmissibility. A.R.S. § 13-1421(A). The rape-

11   shield's general prohibition may give way in certain circumstances, including where there

12   is evidence that supports a claim that the victim has a motive in accusing the defendant of the

13   crime. *Id.*

14        The Supreme Court has held that a defendant's right to present evidence is not

15   unlimited, but instead may give way to the forum state's evidentiary and procedural rules.

16   *Clark v. Arizona*, 548 U.S. 735, 770 (2006). A state's rape-shield statute implicates the Sixth

17   Amendment "to the extent that it operates to prevent a criminal defendant from presenting

18   relevant evidence." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). However, the right to

19   present relevant testimony may in appropriate cases "bow to accommodate other legitimate

20   interests in the criminal trial process." *Id.* (internal quotation marks and citation omitted).

21   "A state passing a rape shield law makes a "valid legislative determination that rape victims

22   deserve heightened protection against surprise, harassment, and unnecessary invasions of

23   privacy." *Anderson v. Morrow*, 371 F.3d 1027, 1030 (9th Cir. 2004) (internal quotation

24   marks and citation omitted). In light of Bob's testimony that he and Rita were not

25   romantically involved, evidence that the two had a prior sexual relationship had low

26   probative value when compared to its potential for prejudice. Where, as here, Petitioner fails

27   to offer sufficient evidence of his motive-to-fabricate theory, it is not an unreasonable

28   application of Supreme Court precedent to hold that sexual history impeachment evidence

is not admissible.

Further, Petitioner was not denied an opportunity to introduce relevant evidence in support of his theory that Rita had fabricated the rape allegation. This evidence included testimony from Linda Ebbert, a registered nurse and sexual assault nurse examiner, that Rita lacked certain injuries suffered by rape victims and her injuries could have occurred during consensual sex (Doc. 63, Ex. I at 79, 83-96); testimony of Petitioner's half-brother Harry Wright that he was asleep in the room next to Petitioner's bedroom on the night of the incident but overheard no loud noises even though he is a light sleeper (Doc. 63, Ex. I at 129-33); testimony of a taxi cab driver that he drove to Petitioner's townhouse late at night to pick up a "calm and normal" woman who embraced Petitioner before entering the cab (Doc. 63, Ex. J at 125-33, 137); the testimony of Rita's sister that she was "taken aback" by Rita's explicit sexual actions toward Petitioner at the club, that she observed them kissing in the van, and that she was concerned when Rita walked Petitioner to his front door (Doc. 63, Ex. G at 34-35, 37, 40-42); and Rita's testimony at trial that on the night of the incident she engaged in heavy petting with Petitioner, walked with him to the front door over Bob and her sister's objections, called Bob's cell phone to report that she was spending the night with Petitioner, had sex with Petitioner without any explicit threats, and walked home without hailing three patrol cars to report the assault to the police. (Doc. 63, Ex. H at 87-88, 90-92, 99-108, 111-12, 115-16.) Ground Two should be denied as without merit.

### Grounds Six(a) and Seven: Brady and a State Witness's Criminal History

Petitioner contends in Ground Six(a) that the State prosecutor violated his constitutional rights to due process and a fair trial by failing to disclose Ms. Graham's entire criminal history. (Doc. 6 at 14.) He contends in Ground Seven that the State violated his constitutional right to due process by failing to disclose that Ms. Graham had a previous conviction for false reporting to law enforcement. (Doc. 6 at 16.)

In an August 2, 2005 joint pretrial statement, the prosecutor reported an "open case file," and that she intended to call as a trial witness Glenda Graham. (Doc. 32, Ex. A, Item 24.) The state provided the transcript of Detective Apodaca's interview of Ms. Graham.

(Doc. 32, Ex. A, Items 32 & 68.)  At a pretrial hearing, defense counsel commented that he had "made two requests of the prosecution for any felony records of Ms. Graham.  I am now advised she doesn't have one." (Doc. 32, Ex. C at 62.)  The State confirmed Ms. Graham's misdemeanor convictions for shoplifting in 1994 (CR 044125) and for possession of drug paraphernalia (CR 049499).  (*Id.* at 62-63; *see* Doc. 33, Ex. AA.)  Defense counsel "accept[ed] the State's representation subject to further investigation." (Doc. 32, Ex. C at 63.)  No other issue was raised during trial or on appeal regarding Ms. Graham's prior criminal history.

An investigator for Petitioner's appointed PCR counsel used Ms. Graham's name, aliases, and personal identifier information to retrieve her criminal history records. (Doc. 32, Ex. B, Item 29, Ex. B.)  Ms. Graham's history listed 27 criminal cases, excluding the two mentioned by the State, plus one traffic case.  (*Id.*)  Petitioner asserted in his PCR Petition that the prosecutor had not disclosed Ms. Graham's criminal history, including the January 26, 2001 conviction for false reporting to law enforcement (M-1041-CR-34411), and trial counsel was ineffective in failing to investigate or present her criminal history.[6] (Doc. 32, Ex. B, Item 29 at 10-18.)  Petitioner argued that, because the prosecutor had disclosed two misdemeanor convictions at the pretrial hearing, the State should have known about Graham's false reporting convictions.  (Doc. 32, Ex. B, Item 29 at 12-13.)

In denying the claim, the PCR court appears to have considered Petitioner's due process and ineffective assistance claims together.  It noted that  it was not known what information the prosecutor had regarding Ms. Graham's criminal history or why defense counsel had not learned of her criminal matters.  The court assumed defense counsel would have discovered the conviction with additional research, and found  that it would have been admissible impeachment evidence. (Doc. 32, Ex. B, Item 32 at 4-8.)  The PCR court concluded that it would have admitted Ms. Graham's testimony about the Joyce B. incident

---

[6] Petitioner raised the ineffective assistance of counsel claim as Claim 6(b) of the habeas petition, which is addressed below.

1   with knowledge of her conviction. (Doc. 32, Ex. B, Item 32 at 7.)  The court found that

2   Petitioner had not shown prejudice,  noting that Ms. Graham had been the subject of intense

3   cross-examination by defense counsel about her memory problems, medication and

4   intoxication, and the State's evidence of the sexual assault on Rita was strong.  (*Id*. at 6-8.)

5   The state appeals court reasoned that the same prejudice standard applied to the *Brady v.*

6   *Maryland,* 373 U.S. 83 (1963) issue and to the ineffective counsel issue. It denied relief

7   based on lack of prejudice, although it indicated some disagreement with the trial court's

8   implicit finding that the State had a duty to disclose only if the prosecutor had personal

9   knowledge of the information.  The court found it significant that the jury found Rita's

10  testimony credible based on the guilty verdict, which was buttressed by the jury's additional

11  finding that Rita had suffered emotional harm due to the offenses.  (Doc. 33, Ex. W at 5-9.)

12      The prosecution's suppression of evidence "favorable to an accused . . . violates due

13  process where the evidence is material either to guilt or to punishment, irrespective of the

14  good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  To establish a *Brady*

15  violation, the defendant must show that the evidence is favorable to the accused because it

16  is either exculpatory or impeaching, that the evidence was suppressed by the prosecution

17  either willfully or inadvertently, and resulting prejudice has occurred.  *Strickler  v.  Greene*,

18  527 U.S. 263, 281-82 (1999).  "[E]vidence is material 'if there is a reasonable probability

19  that, had the evidence been disclosed to the defense, the result of the proceeding would have

20  been different.'" *Id.*  at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  "A

21  'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

22  *Bagley*, 473 U.S. at 682.

23      Most of the 27 cases are not material because they would not have been admissible

24  to impeach Ms. Graham. *See Wood v. Bartholomew*, 516 U.S. 1, 6-8 (1995) (state's failure

25  to disclose results of witness's polygraph test did not deprive defendant of "material"

26  evidence under *Brady* because the results were inadmissible under state law).  First,

27  approximately twelve involved charges that were filed after Ms. Graham's trial testimony on

28  February 8, 2006. (Doc. 32 at 93 & n. 27; Doc. 32, Ex. B, Item 29, Ex. B.)  Second, only

cases resulting in a conviction are admissible by way of extrinsic evidence and many were resolved without a conviction. Ariz. R. Evid. 608(b), 609(a).   Third, misdemeanor convictions are admissible only if an element of the crime is a dishonest act or false statement. Ariz. R. Evid. 609(a)(2); *see State v. Malloy*, 639 P.2d 315, 317-20 (Ariz. 1981) (holding that prior misdemeanor convictions are admissible under Ariz. R. Crim. P. 609(a)(2) if the conviction is for an offense which involved an element of deceit or falsification, such as perjury, false statement, criminal fraud, embezzlement, false pretense, and other offenses in the nature of *crimen falsi*, "but excluding robbery and theft").   Taking these restrictions into account, the only admissible conviction was a 2001 misdemeanor conviction for false reporting to law enforcement, which is the subject of Claim Seven and discussed below.[7] The nondisclosure of Ms. Graham's overall criminal history, other than her false reporting conviction, was not a constitutional violation because the evidence was not admissible and, thus, not "material" under *Brady*.   Ground 6(a) fails for that reason.

As for Ground Seven and the nondisclosure of Ms. Graham's January 26, 2001 false reporting conviction for purposes of impeachment (Doc. 32, Ex. B, Item 29, Ex. B [M-1041-CR-34411]), Ms. Graham was not the State's primary witness because she was not the victim of the charged crimes.   "In general, impeachment evidence has been found to be material where the witness at issue 'supplied the only evidence linking the defendant[] to the crime . . . or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotation marks and citations omitted).   Ms. Graham's testimony was limited

---

[7] The following cases were dismissed without a conviction: false reporting to law enforcement, criminal trespass and failure to appear [M-1041-CR-93802 & M-1041-CR-57570] (against Ms. Graham's alias Glenda Joyce Harrelson); theft and criminal trespass [M-1041-CR-94100216, M-1041-CR-93075215] (against Ms. Graham's alias Glenda Joyce Spikings); two charges of failure to appear and false reporting to law enforcement [M-1041-CR-1065278]; theft [M-1041-CR-96007686]; and shoplifting [M-1041-CR-3068504]. (Doc. 32, Ex. B, Item 29, Ex. B.) Of the convictions, most did not involve an element of deceit: failure to appear [M-1041-CR-94100216] (against Spikings); and theft [M-1041-CR-99303278]. (*Id.*)

to other-act evidence involving the uncharged Joyce B. incident in 2001. The State also introduced as evidence five color photographs that showed Joyce's bruises and which Ms. Graham testified were the same bruises she had seen on the night of the assault. (Doc. 32, Ex. F at 47-51, 58-59, 113-15.) Further, the record shows that defense counsel used other circumstances to impeach Ms. Graham at trial. Defense counsel cross-examined Ms. Graham on her prior head injuries and memory problems, her consumption of alcohol on the night of the Joyce B. incident, her recent use of morphine, her failure to call the police after the attempted assault, and the inconsistencies between her pretrial interview statements and her trial testimony. (Doc. 32 at 90-92 (citing Doc. 32, Ex. F at 93-102, 108-09, 111-12, 121-25, 126-27, 131).)   "Where the undisclosed impeachment evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material" under *Brady*. *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000) (internal quotations marks and citations omitted). Finally, the jury was instructed that it could not find Petitioner guilty unless it found beyond a reasonable doubt that he had committed the charged acts against Rita, even if the jury found that Petitioner had committed the prior act against Joyce or had a character trait that predisposed him to commit the charged offense. (Doc. 58, Ex. A, Item 124 at 14; Doc. 63, Ex. K at 24-25.) Petitioner has not shown a reasonable probability that the result of the proceeding would have been different if he had known about Ms. Graham's conviction for false reporting.

The disposition by the state court of Petitioner's *Brady* claims in Grounds Six(a) and Seven was neither contrary to, nor an unreasonable application of, clearly established law, as defined by Supreme Court holdings.

### Grounds Six(b), Eight and Nine: Ineffective Assistance of Counsel, Witness's Criminal History

Petitioner contends that trial counsel was ineffective in failing to: investigate Ms. Graham's criminal history (Ground Six(b)), ask the trial court to admit Ms. Graham's entire

1    criminal history (Ground Nine); and impeach Ms. Graham with her conviction for false

2    reporting to law enforcement (Ground Eight).  (Doc. 6 at 14, 18-21.)  Petitioner asserted in

3    his PCR Petition that trial counsel was ineffective in failing to investigate or present Ms.

4    Graham's criminal history.  (Doc. 32, Ex. B, Item 29 at 10-18.)  The PCR court denied the

5    claim based on lack of prejudice.  (Doc. 32, Ex. B, Item 32 at 6-8.)  The court of appeals

6    granted review but denied relief. (Doc. 33, Ex. W at 5-9.)

7         Ineffective assistance of counsel (IAC) claims are governed by *Strickland v.*

8    *Washington*, 466 U.S. 668 (1984).  To prevail under *Strickland*, a petitioner must show that

9    counsel's representation fell below an objective standard of reasonableness and that the

10   deficiency prejudiced the defense.  *Id*. at 687-88.

11        The inquiry under *Strickland* is highly deferential, and "every effort [must] be made

12   to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

13   challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

14   at 689.  Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must

15   overcome "the presumption that, under the circumstances, the challenged action might be

16   considered sound trial strategy." *Id*.

17        Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court

18   "need not determine whether counsel's performance was deficient before examining the

19   prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697 ("if it

20   is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

21   . . . that course should be followed").  A petitioner must affirmatively prove prejudice. *Id*.

22   at 693.  To demonstrate prejudice, he "must show that there is a reasonable probability that,

23   but for counsel's unprofessional errors, the result of the proceeding would have been

24   different.  A reasonable probability is a probability sufficient to undermine confidence in the

25   outcome." *Id*. at 694.  Petitioner bears the burden of showing the state court applied

26   *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone,*

27   535 U.S. 685, 698-99 (2002).

28        Regarding Grounds Six(b) and Nine, all of Ms. Graham's previous charges and

convictions, except for false reporting, were inadmissible. *See supra* Claim 6(a). A defendant is not prejudiced when counsel does not develop testimony that is inadmissible at trial. *Stanley v. Schriro*, 598 F.3d 612, 620 (9th Cir. 2010).

As for Ground Eight, regarding counsel's failure to impeach Ms. Graham with her false reporting conviction, Petitioner has not established prejudice under *Strickland*. "*Brady* materiality and *Strickland* prejudice are the same." *Gentry v. Sinclair*, 705 F.3d 884, 906 (9th Cir. 2013). Where, as discussed above in Ground Seven, information about a witness does not constitute a *Brady* violation for lack of materiality, it does not support an IAC claim. *Id*.

The state appellate court's determination that Petitioner was not prejudiced as a result of defense counsel's alleged errors was not objectively unreasonable.

### Ground Ten:  Harmful Error

Petitioner contends in Ground Ten that the errors asserted in Grounds Six through Nine were not harmless. (Doc. 6 at 22.) This is not a federal claim and is, therefore, not cognizable. *See* 28 U.S.C. § 2241. The Court applied the appropriate federal standard to Grounds Six through Nine and found no error. Therefore, Ground Ten should be denied as not cognizable.

### Grounds Eleven and Twelve: Ineffective Assistance of Counsel, Confrontation Clause

Petitioner contends that his trial and appellate lawyers were ineffective in failing to argue that the Confrontation Clause precluded the admission of Joyce's statements to Ms. Graham. (Doc. 6 at 25, 27.) During the evidentiary hearing and prior to Ms. Graham's testimony, the trial court recognized that defense counsel had moved to exclude Ms. Graham's testimony under Arizona Rule of Evidence 404(c) and *Crawford v. Washington*, 541 U.S. 36 (2004). (Doc. 32, Ex. A, Item 37 at 5-6 & Ex. C at 55-56.) After the evidentiary hearing, defense counsel acknowledged that *Crawford* did not apply but maintained instead that Ms. Graham's inconsistencies and poor memory rendered the out-of-court statements unreliable so as to preclude their admissibility. (*Id*., Item 56 at 3-7 & n.1.) The trial court

1    ruled admissible Ms. Graham's testimony regarding what Joyce had said to her.  (Doc. 32,

2    Ex. A, Item 69.)  The issue was not raised on direct appeal.

3            Petitioner's PCR counsel asserted that trial and appellate counsel rendered deficient

4    performance by not raising a *Crawford*-based objection to the admission of Joyce's

5    extrajudicial statements through Ms. Graham at trial.  (Doc. 32, Ex. B, Item 29 at 18-24.)

6    The court found that defense counsel had unsuccessfully argued the Confrontation Clause

7    issue and, therefore, Petitioner could not prevail on the performance prong of *Strickland*.

8    (Doc. 32, Ex. B, Item 32 at 8-9.)  It further determined that Ms. Graham's testimony

9    regarding Joyce's statements – that Petitioner was "hurting" her and what Joyce said to Ms.

10   Graham in the bathroom – were "excited utterances" that fit the definition of admissible,

11   nontestimonial hearsay and that the Confrontation Clause was not violated.  (*Id.*)  Petitioner

12   raised the issue in seeking review before the Arizona Court of Appeals who adopted the trial

13   court's ruling and denied relief.  (Doc. 33, Exs. V, W.)

14           Ms. Graham testified that while in the bathroom she heard a scream of "ouch" and

15   went into the living room where she saw Joyce and Petitioner naked on the floor.  Ms.

16   Graham observed that Joyce appeared "shaken" and "scared."  Joyce made statements to Ms.

17   Graham when the two went into the bathroom allegedly a few moments after Petitioner had

18   struck Joyce.  (Doc. 32, Ex. C at 69-78, 82-86, Ex. D at 22-23, 27-28, Ex. F at 43-53, 107-09,

19   112-18.)

20           The Supreme Court in *Crawford* held that the Confrontation Clause bars only

21   "testimonial" out-of-court statements. 541 U.S. at 51. "'Testimony,' is typically '[a] solemn

22   declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.*

23   An accuser who makes a formal statement to government officers bears testimony in a sense

24   that a person who makes a casual remark to an acquaintance does not." *Id.* *Crawford* did

25   not address "whether and when statements made to someone other than law enforcement

26   personnel are 'testimonial.'" *Davis v. Washington*, 547 U.S. 813, 823 n.2 (2006).

27           There is no clearly established Supreme Court law finding that excited utterances to

28   a lay person should be considered testimonial.  Further, Joyce's statements to Ms. Graham,

were casual remarks to an acquaintance, not a formal declaration to prove a fact.  Thus, they were not testimonial.  Trial and appellate counsel did not render deficient performance regarding the admission of Joyce's statements based on *Crawford*.  Petitioner cannot satisfy either the performance or prejudice prongs of *Strickland*.  The Arizona courts' rejection of his ineffectiveness claims was not contrary to, nor an unreasonable application of, clearly established law based on Supreme Court holdings.

### Petitioner's Claims Asserted in his Reply and Supplemental Reply

Petitioner argues for the first time in his Reply that the following alleged harmful errors occurred during the state court proceedings:  Juror Woods stated during voir dire that she was not sure if she could be fair and impartial but the trial court coerced her to remain on the jury; Petitioner instructed defense counsel to object to the State's lead detective participating in the jury selection process but counsel failed to comply; the trial court instructed the jury "you must think the defendant is guilty because of these other charges" but defense counsel failed to object and this subliminal message improperly influenced the jury; defense counsel did not object to the prosecutor's opening statement that Petitioner had a propensity or character trait to rape women; defense counsel failed to object to the court's jury instruction that "you must not consider punishment when deciding on guilt" or that Petitioner had a character trait that predisposed him to commit the crimes; defense counsel failed to object to the prosecutor's statement during closing argument that Petitioner is a predator who picks his victims; "the prosecutor and the court were in accord and took advantage of [defense counsel's] inebriated state"; and appellate counsel was ineffective for failing to argue certain of these issues on appeal.  (Doc. 41 at 66-70.)

Petitioner argues for the first time in his Supplemental Reply (Doc. 46) the following alleged errors:  there was a telephone interview on September 21, 2005, with Bob with both counsel present in which Bob said he had a romantic relationship with Rita (at 6); that Rita's sister allegedly destroyed a taped message after being instructed not to do so by the State (at 8); a State investigator met with Rita and her sister at a restaurant prior to the second trial but defense counsel was not invited and the meeting was not tape recorded (at 11, 48); there was

an in-chambers conference on September 29, 2005, with counsel present but without Petitioner who claims he did not waive his presence (at 45); that Rita misidentified him at trial (at 46); the prosecutor's interview of Ms. Graham was not recorded or provided to Petitioner in violation of *Brady* (at 47); defense counsel failed to impeach Rita and Ms. Graham with their prior inconsistent statements (at 48); and the trial court wrongfully ruled that Rita's hospital records were inadmissible (at 48).[8]

Rule 2 requires that Petitioner's federal habeas petition "specify all the grounds for relief available to petitioner" as well as "the facts supporting each ground[.]" Rule 2(c), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. These issues that were not raised in the Amended Petition have not been considered. *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) (arguments raised for the first time in a habeas petitioner's reply brief are deemed waived).

## RECOMMENDATION

Grounds One through Twelve fail on the merits. Based on the foregoing, the Magistrate Judge recommends that the District Court dismiss the Amended Petition for Writ of Habeas Corpus (Doc. 6).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the

---

[8] Petitioner also contends that certain trial transcripts are missing from his state court record. (Doc. 46 at 2, 43-44.) Respondents failed to attach certain trial records as exhibits to their Answer in the instant habeas case, but this omission has been corrected. (Docs. 55, 58, 62-63.)

1   parties should use the following case number: CV-11-00271-TUC-FRZ.

2          DATED this 13th day of May, 2014.

3

4

5

6

7   _____

8                    D. Thomas Ferraro
                     United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28